## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LAURIE GREENE,     )
           )
    Plaintiff,    )
           )  C.A. No:
   v.       )
           )  JURY TRIAL DEMANDED
CARAVEL ACADEMY, INC;  )
And JERRY LAMEY in his official )
Capacity as Head of School  )
           )
    Defendants.   )

## COMPLAINT

## INTRODUCTION

1. Plaintiff, Laurie Greene ("Plaintiff"), files this action against Defendants, Caravel Academy, Inc. and Jerry Lamey ("Defendants") for damages for *inter alia*, for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et. seq*., the Delaware Persons with Disabilities Employment Protection Act, 19 *Del. C.* § 720, *et. seq.*, the Delaware Whistleblower Protection Act, 19 *Del. C.* § 1701, the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq*., and Breach of the Implied Covenant of Good Faith and Fair Dealing.

## NATURE OF THE ACTION

2. Defendant Caravel employed Plaintiff for six years. Plaintiff was hired as a school nurse in September of 2014 and was terminated on September 11, 2020.

3. Defendant Caravel engaged in disability discrimination and wrongfully discriminated against Plaintiff by virtue of her disability in violation of the Americans with Disabilities Act of 1990 and the Delaware Persons with Disabilities Employment Protections Act.

4.      Defendant Caravel violated the Delaware Whistleblower Protection Act, 19 *Del. C.* § 1703.

*5.*      Defendants interfered with Plaintiff's ability to obtain protected medical leave, in violation of the Family Medical Leave Act ("FMLA") of 1993, as amended, 29 U.S.C. § 2601 *et seq.*

6.      Defendant Caravel breached the implied covenant of good faith and fair dealing which, under Delaware law, inheres in every contract.

## JURISDICTION

7.       This Court has federal question jurisdiction over this cause of action pursuant to 28 U.S. Code § 1331.

8.      This Court has supplemental jurisdiction over all state causes of action pursuant to 28 U.S.C. § 1367 and 19 *Del. C.* § 1704.

9.      Venue is proper in this district pursuant to 29 U.S.C. § 1331, as well as 28 U.S.C. § 1391(b).

## PARTIES

10.      Plaintiff, Laurie Greene, ("Plaintiff"), is a resident of Bear, New Castle County, Delaware. At all times relevant to this Complaint, Plaintiff was an employee of Defendant.

11.      Defendant Caravel is located at 2801 Del Laws Road, Bear, Delaware 19701. At all times relevant hereto, Defendant Caravel was an "employer" as defined by 42 U.S.C. § 2000e(b).

12.      Defendant Jerry Lamey ("Defendant Lamey") is the Head of School for Caravel Academy, Inc., and as such, is responsible for enforcing regulations and guidelines imposed by the state and federal governments.

2

## ADMINISTRATIVE PROCESS

13.     On February 8, 2021, Plaintiff filed a timely Charge of Discrimination with the Delaware Department of Labor ("DDOL") and simultaneously with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation against Caravel Academy.

14.     On July 15, 2021, Plaintiff requested a right to sue from the DDOL.

15.     On July 21, 2021, Plaintiff received a "Notice of Right to Sue" from the DDOL. *See Exhibit A.*

16.     On July 27, 2021, Plaintiff requested a right to sue from the EEOC.

17.     On August 6, 2021, Plaintiff received a "Notice of Right to Sue" from the EEOC. *See Exhibit B.*

18.     Plaintiff has filed this action within ninety (90) days after receipt of her Right to Sue Notice from the DDOL and EEOC.

19.     Plaintiff has satisfied all statutory prerequisites prior to filing this action against Defendants.

## FACTS

**Plaintiff Was Terminated For Her Whistleblower Activity**

20.     As a result of the onset of the COVID-19 Pandemic, Governor Carney declared a State of Emergency for the State of Delaware to become effective as of March 13, 2020.

21.     On March 24, 2021, a shelter in place order went into effect for the State of Delaware, requiring all individuals currently living in the State of Delaware to remain in their home or place of residence unless for essential activities or essential travel.

22.     Due to Governor Carney's emergency orders, Caravel Academy moved to fully remote learning for the remainder of the 2019-2020 school year.

23.     On July 1, 2020, Plaintiff asked to meet with Defendant Lamey and Ms. Heuschkel to prepare for the COVID-19 re-entry process.

24.     Plaintiff made several suggestions to Defendant Lamey to ensure Defendants were in compliance with DDOE, DDPH and CDC Guidelines.

25.     Plaintiff's suggestions were dismissed.

26.     On July 16, 2020, without consulting with Plaintiff, Defendant Lamey announced the Caravel Restart Plan ("Restart"). Restart included limited and directed hallway traffic, assigned bathrooms, mask requirements when moving between classrooms, and isolation rooms for students/staff with Covid-like symptoms.  On August 26, 2020, Governor Carney announced the twenty-fifth Modification of the State of Emergency Declaration, which included requirements for in-person education.

27.     As of August 27, 2020, all in-person education facilities were required to comply with the Twenty-Fifth Modification of the State of Emergency Declaration as well as the school reopening instructions provided by the Delaware Department of Education.

28.     The Twenty-Fifth Modification of the State of Emergency Declaration required the educational facility holding in person to have: (1) access to handwashing facilities and supplies as well as hand sanitizer for students and staff, (2) desks arranged a minimum of 3' apart and facing the same direction, (3) no off site field trips, (4) provide for a designated area for those exhibiting symptoms, (5) enhanced cleaning of high-touch surfaces every fifteen minutes to two hour time period, (6) limit capacity on school buses, (7) wearing of face masks for individuals above kindergarten.

4

29.     The Delaware Department of Education ("DDOE") issued reopening instructions indicating Delaware schools may reopen under a hybrid teaching model.

30.     The DDOE reopening guidelines stated, "Hallways or corridors should flow either in one direction only or, if not possible, one direction on each side of the hallway with ample 6 feet of distance between students in single file flow on each side"

31.     "Use floor tape or other markers at recommended six-foot intervals with a minimum of 3 feet with face coverings where line formation is anticipated."

32.     "Students should be kept in stable groups throughout the day with little to no mixing of classes."

33.     School Health Return to School Additional Guidance was developed by the Delaware Department of Education as a supplement to the Returning to School guidelines to direct school nursing staff on how to properly prepare for school reopening.

34.     The School Health Return to School Additional Guidance stated, "It is preferable for schools to have two separate health areas, a non-isolation area, and an isolation area, to address the health needs of the school population. Both areas should have easy access to a bathroom and sink with running water as well as availability of other hand hygiene supplies. These two separate areas need to be clearly identified and labeled space that allows for the recommended distance of 6 feet or greater between individuals and must maintain a minimum of 3 feet apart with a face covering. Both areas require a supervising adult to be present…"

35.     During the months leading up to reopening, Plaintiff frequently witnessed members of the administration, secretarial staff, and maintenance crew without masks.

36.     As of August 10, 2020, there were no structural changes to the classrooms or the nurse's office. Plaintiff reported concerns with the lack of isolation and equipment to Defendant Lamey.

37.     Plaintiff requested to meet with Defendant Lamey to go over additional recommendations and to propose that Defendants consider a hybrid learning model.

38.     During the meeting, Defendant Lamey accused Plaintiff of not being a "team player" due to her reported concerns with Restart.

39.     Defendant Lamey advised the parents of Caravel wanted the school to reopen five days per week including before and aftercare, and therefore, they must act in accordance with the parents' demands. Due to her position as school nurse, Plaintiff was aware of several staff members and students who were at high risk of severe complications if they were to contract COVID-19.

40.     Plaintiff expressed concerns for herself and for others who were immunocompromised. Defendant Lamey dismissed Plaintiff's concerns stating, "no one else has told us they are immunocompromised."

41.     Plaintiff provided Ms. Moxley with a list of equipment needed including a HEPA air filtration system. Despite prior notice, Ms. Moxley disregarded these concerns and failed to obtain the necessary equipment before students returned to school.

42.     On August 28, 2020, and August 30, 2020, Plaintiff reported her concerns with Defendants' noncompliance to DHSS. Plaintiff was told they would be reaching out to Defendant Lamey to go over COVID-19 guidelines.

43.     On September 4, 2020, just four days prior to the students' return to school, Plaintiff filed a formal complaint with DHSS. Plaintiff's complaint outlined the items that she

previously reported to Defendant Lamey and Ms. Moxley. The violations included no directional arrows in hallways, no one checking for masks, no six feet markings on the floor, no hand sanitizing stations in hallways/classrooms, shared bathrooms for COVID students and the rest of the school, no barriers between secretary and visitors, classrooms with twenty-five students without proper social distancing, and COVID rooms did not have running water or air filtration systems.

44.     Despite Plaintiff's reports and Defendants' ill-prepared facilities, Defendants reopened on September 8, 2020, in accordance with the Caravel parents' demands.

45.     On September 9, 2020, there was one positive COVID-19 case and two pending cases amongst Defendants' students and staff.

46.     Plaintiff immediately informed Defendant Lamey that students should not be switching classes to avoid the spread. Defendants lacked any procedures for ensuring proper social distancing would be maintained in the hallways.

47.     Plaintiff called Delaware Public Health ("DPH") to report the positive case.

48.     Plaintiff thereafter contacted Defendant Lamey and Barb Bruno, school nurse, to advised that she had contacted DPH, and they would be reaching out to Defendant Lamey.

49.     Defendant Lamey scheduled an emergency faculty meeting to discuss the COVID-19 positive case. Plaintiff and Defendant Lamey had agreed the other nursing staff would attend the meeting in Plaintiff's place while she continued to assist with the DPH investigation and handle the COVID-19 positive cases.

50.     Plaintiff was terminated on September 11, 2020, almost immediately after her last complaint regarding Defendants' deviation from standards implemented to protect employees, students and others from health and safety hazards associated with COVID-19.

**Defendant Discriminated Against Plaintiff Because of her Disability**

51.     Plaintiff was diagnosed with asthma in 2000. As a result of her diagnosis, Plaintiff is immunocompromised. Plaintiff's diagnosis puts her at a higher risk for severe complications were she to contract COVID-19.

52.     In August of 2020, Plaintiff reminded Defendant Lamey and Ms. Moxley of her health conditions which put her at high risk for severe complications if she were to contract COVID-19. Ms. Moxley dismissed Plaintiff, stating she was the only one who expressed concerns with Restart, and therefore, no accommodations would be provided.

53.     In or around August 13, 2020, Plaintiff requested an accommodation of a HEPA filtration system and plexiglass between the nursing office and the COVID-19 room to allow her to perform the essential functions of her position, i.e., monitoring sick students.

54.     Ms. Moxley denied Plaintiff's request and further failed to engage in the interactive process with Plaintiff. Instead, Ms. Moxley told Plaintiff to open a window.

55.     Defendants required teachers to report to work on August 25, 2020.

56.     On multiple faculty days, Plaintiff witnessed Defendant Caravel's employees not wearing a mask within the school building.

57.     On August 27, 2020, out of concern for her safety due to Defendants' failure to comply with CDC, DDPH, and DDOE guidelines, Plaintiff consulted with her doctor. After consulting with her doctor, Plaintiff informed Ms. Moxley she was approved to return to work so long as she had access to proper PPE. Plaintiff reiterated her need for complete compliance with CDC, DDPH, and DDOE guidelines due to her immunocompromised state. On several occasions, Plaintiff reported to Defendant Lamey and Ms. Moxley concerns about continued noncompliance with COVID-19 guidelines. Defendants continued to disregard Plaintiff's

8

requests for a reasonable accommodation. Defendants further failed to engage in the interactive process as required under the Americans with Disabilities Act.

58.     On September 4, 2020, Plaintiff filed a complaint with DHSS regarding Defendants' noncompliance with government school reentry guidelines.

59.     Despite her concerns with Defendants' violations, Plaintiff reported to school for the reopening of the 2020-2021 school year on September 8, 2020.

60.     On September 8, 2020, Defendants failed to provide the proper PPE for nursing staff.

61.     Unfortunately, on September 9, 2020, due to lack of compliance with COVID-19 guidelines, Defendants had its first COVID-19 positive case.

62.     Pursuant to the DDOE supplemental guidelines, the school nurse was instructed to contact the Office of Infectious Disease Epidemiology within DPH to report the case and work with DPH epidemiologists to support their investigation and contact tracing.

63.     Plaintiff promptly reported this information to Ms. Paula Eggers, DPH epidemiologist.

64.     On September 9, 2020, Defendant Lamey scheduled an emergency faculty meeting for afterschool. Plaintiff and Defendant Lamey had agreed the other nursing staff would attend the meeting in Plaintiff's place, while Plaintiff assisted DPH in their investigation and continued to monitor the COVID-positive cases. On September 10, 2020, Plaintiff was out of work due to COVID-like symptoms. Plaintiff advised she would return to work once she received a negative test result.

65.     Plaintiff informed Tara Heuschkel, Upper School Principal, Defendant Lamey, Head of School, and the nursing staff of her emergency absence.

66.     On September 11, 2020, Plaintiff received a letter from Defendants stating her employment was terminated effective immediately.

## CLAIMS AND DAMAGES

Based upon the above allegations, Plaintiff maintains the following legal claims against Defendants:

### COUNT I
**Violation of the Delaware Whistleblower Protection Act**
**19 *Del. C.* §1703**
**Against Defendant Caravel**

67.     The allegations of Paragraphs 1 through 66 are incorporated by reference as if fully restated herein.

68.     Defendant is an "Employer" within the meaning of 19 *Del. C.* §1702.

69.     Plaintiff is an "Employee" within the meaning of 19 *Del. C.* §1702.

70.     Plaintiff engaged in protected activity when she reported Defendants' non-compliance with CDC, DDOE, and DDPH Guidelines.

71.     Plaintiff reported a violation as defined in the Delaware Whistleblower Protection Act when she reported Defendants' non-compliance with the CDC, DDOE, and DDPH COVID-19 Guidelines.

72.     Plaintiff reported unsafe working conditions which are laws and regulations promulgated to protect employees and students from health and safety hazards.

73.     Plaintiff reported violations promulgated to protect employees, students and others from health and safety hazards as provided for by the CDC, DDOE, and DDPH.

74.     Defendants were aware of unsafe working conditions and non-compliance with CDC, DDOE, and DDPH guidelines.

75.     Defendants discharged Plaintiff on September 11, 2020, in violation of the Delaware Whistleblower Protection Act because of the internal reports she made regarding Defendants' violations as well as either their knowledge or belief of Plaintiff's report of Defendants' violations to a public body.

76.     Defendants violated the Delaware Whistleblower Protection Act.

77.     Plaintiff has been injured by Defendants' violation of the Delaware Whistleblower Protection Act, and as a result, suffered from economic loss.

78.     Plaintiff is entitled to damages for back pay, front pay, benefits, consequential damages, and any other damages, so ordered by the Court, to correct Defendants' actions.

79.     Plaintiff is entitled to punitive damages regarding Defendants' conduct to prevent future violations.

80.     Plaintiff is entitled to an award of attorneys' fees and costs associated with bringing this litigation.

## Count II
### Failure to Accommodate in Violation of the Americans with Disabilities Act of 1990, 42 U.S.C § 12101 *et seq.* Against Defendant Caravel

81.     The allegations of Paragraphs 1 through 80 are fully incorporated by reference as if fully restated herein.

82.     Defendant Caravel employs more fifteen or more employees and is an "Employer" as defined by 42 U.S.C. § 12111(3).

83.     At all times relevant hereto, Plaintiff was employed by Defendant and is an "Employee" as defined by 42 U.S.C. § 12111(4).

84.     Plaintiff received a Right to Sue letter from the DDOL on July 21, 2021, and a Right to Sue letter from the EEOC on August 6, 2021. Plaintiff has satisfied all statutory prerequisites for filing this action.

85.     Plaintiff is immunocompromised and suffers from Asthma, which constitutes a disability as defined by 42 U.S.C. § 12102.

86.     In or around August of 2020, Plaintiff expressed concerns with returning to work in the fall without Defendants' complete compliance with CDC guidelines. Plaintiff requested a reasonable accommodation of use of a HEPA filtration system, proper PPE, proper social distancing, enforcing mask use, and a possible leave of absence.

87.     In response, Plaintiff was told by Ms. Moxley, that she was the only one who expressed concerns related to the school's conditions, and therefore, Defendants were, "not providing accommodations."

88.     Defendants repeatedly refused to engage in discussions with Plaintiff regarding her accommodation requests.

89.     Defendants were required to initiate the interactive process with Plaintiff to identify the limitations resulting from her disability and potential reasonable accommodation that could overcome those limitations.

90.     Defendants failed to state an undue hardship it would have suffered by providing Plaintiff with her requested reasonable accommodations.

91.     Plaintiff has suffered damages as a result of Defendants' unlawful discriminatory actions, including past and future lost wages and benefits, as well as the costs of brining this action.

## Count III
**Discrimination in Violation of the Americans with Disabilities Act of 1990
42 U.S.C § 12101 *et seq.* and the Delaware Persons with Disabilities Employment
Protections Act, 19 *Del. C.* § 720 *et. seq.*
Against Defendant Caravel**

92.     The allegations in Paragraphs 1 through 91 are incorporated by reference as if fully restated herein.

93.     Defendant Caravel employs more fifteen or more employees and is an "Employer" as defined by 42 U.S.C. § 12111(3) and 19 *Del. C.* § 710(7).

94.     At all times relevant hereto, Plaintiff was employed by Defendant Caravel and is an "Employee" as defined by 42 U.S.C. § 12111(4) and 19 *Del. C.* § 710(6).

95.     Plaintiff received a Right to Sue letter from the DDOL on July 21, 2021, and a Right to Sue letter from the EEOC on August 6, 2021. Plaintiff has satisfied all statutory prerequisites for filing this action.

96.     Defendants engaged in intentional disability discrimination in the terms and conditions of Plaintiff's employment due to Plaintiff being predisposed to becoming severely ill if she were to contract COVID-19 and requesting that Defendants comply with federal CDC, DDOE, and DDPH guidelines, in violation of 42 U.S.C. § 12112(b)(5).

97.     Plaintiff suffered damages as a result of Defendants' unlawful discriminatory actions, including past and future lost wages and benefits, emotional distress, and the costs of bringing this action, including attorneys' fees.

## Count IV
**Violations of the Family Medical Leave Act
Against All Defendants**

98.     The allegations of Paragraphs 1 through 97 are incorporated by reference as if fully restated herein.

13

99.    Defendant employs fifty or more employees and is an "Employer" as defined by 29 U.S.C. § 2611(4).

100.    At all times relevant hereto, Plaintiff was employed by Defendant and is an "Eligible Employee" as defined by 29 U.S.C. § 2611(2).

101.    Plaintiff was employed by Defendant Caravel for at least 12 months.

102.    Plaintiff worked for at least 1,250 hours during the 12-month period before her need for leave.

103.    "Leave" under the Act shall be granted to a qualified employee for any of the following reasons "…(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

104.    A "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves … (B) continuing treatment by a health care provider. 29 U.S.C. § 2611(11).

105.    Plaintiff suffered a serious health condition by way of her asthma.

106.    Eligible employees shall be entitled to a total of 12 workweeks of leave during any 12-month period. 29 U.S.C. § 2612(a)(1).

107.    It is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA, and it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the FMLA. § 2615(a)(1).

108.    Plaintiff discussed her asthma diagnosis and her concerns with returning to school with Defendant Lamey and Ms. Moxley in August of 2020.

109.    Defendants failed to inform Plaintiff of her right to take leave under the FMLA.

110.    Plaintiff was terminated because of her medical needs.

111.    Defendants interfered with Plaintiff's right to leave under the FMLA by terminating Plaintiff without properly informing her of her rights under the FMLA.

112.    Defendants have at all times herein, continuously and willfully, or with reckless disregard, violated, and continued to willfully, or with reckless disregard, violate the FMLA and applicable regulations.

113.    As a result, Plaintiff has suffered economic damages.

### Count V
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### Against Defendant Caravel

114.    The allegations of Paragraphs 1 through 113 are incorporated by reference as if fully restated herein.

115.    Every contract, whether oral or written, express or implied, has a covenant to the effect that neither party to the contract will do anything in bad faith to prevent the other party to the contract from enjoying the benefits of the contract. This is known as the implied covenant of good faith and fair dealing, and this covenant applies to the employment agreement between Plaintiff and Defendant.

116.    Defendant Caravel breached this covenant by manufacturing a false reason for terminating Plaintiff's employment, namely stating Plaintiff failed to attend mandatory staff meetings.

117.    Defendant Caravel additionally breached this covenant by terminating Plaintiff for reporting noncompliance with COVID-19 Guidelines in violation of public policy.

118.    Defendant Caravel's breach of the implied covenant of good faith and fair dealing has damaged Plaintiff, financially and professionally.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests this Court order the following relief in favor of Plaintiff:

A.      Declare the conduct by Defendant to be in violation of Plaintiff's statutory rights and common law rights.

B.      Awarding Plaintiff any and all consequential damages, including but not limited to emotional distress damages, lost wages, salary, employment benefits, back pay, front pay, pre and post judgement interest, equity, liquidated damages, and any or all pecuniary damages.

C.      Awarding Plaintiff all compensation due as a result of Defendant's violations herein.

D.      Awarding Plaintiff punitive damages.

E.      Awarding Plaintiff an equal and additional amount as liquidated damages.

F.      Awarding Plaintiff costs and reasonable attorney's fees.

G.      Awarding Plaintiff pre and post judgment interest at the legal rate.

H.      Any and all such other relief as the Court deems appropriate under the circumstances.

**ALLEN & ASSOCIATES**

*/s/ Michele D. Allen*
Michele D. Allen (#4359)
4250 Lancaster Pike Suite 230
Wilmington, DE 19805
302-234-8600
302-397-3930 (fax)
michele@allenlaborlaw.com
Dated: October 19, 2021          *Attorney for Plaintiff*